UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

Case No.  2:21-cv-09317-MCS-SK                Date  April 20, 2022

Title  *Paramount Pictures Corporation et al. v. Does*

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING MOTION FOR DEFAULT JUDGMENT (ECF NO. 36)

Plaintiffs Paramount Pictures Corporation, Universal City Studios Productions LLLP, Universal Content Productions LLC, Universal Television LLC, Warner Bros. Entertainment Inc., Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Netflix Studios, LLC, Netflix US, LLC, and Netflix Worldwide Entertainment, LLC move to enter default judgment against the Doe Defendants who run the PrimeWire website. Mot., ECF No. 36. Even though Defendants have been served, ECF No. 24, Defendants have not yet appeared. The Court deems the motion appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

I.  **BACKGROUND**

Plaintiffs are companies that produce and distribute movies and television programs. *See* Miller Decl. ¶ 4, ECF No. 17. They own several copyrighted works and publicly perform these works, including by streaming performances over the internet. Klaus Decl. ¶¶ 2–139, ECF No. 18; Miller Decl. ¶ 4. Defendants are anonymous entities that own and operate the website PrimeWire. Van Voorn Decl. ¶ 7, ECF No. 16. PrimeWire allows users of the website to access streams of movies

and television shows through embedded streaming or through third-party sites to which PrimeWire provides links. *Id.* ¶ 8. Links are added to PrimeWire in two different ways. First, Defendants, the PrimeWire operators, themselves add links to the PrimeWire database. *Id.* ¶ 23. Second, Defendants also ask users to submit links to a PrimeWire forum. *Id.* ¶ 24. These links are later approved by a PrimeWire moderator. *Id.* ¶ 26. Defendants make money from this third-party streaming by hosting advertisements on the PrimeWire website. *Id.* ¶ 31.

Plaintiffs negotiate with distributors and licensees over the prices and circumstances of reproduction and performance of the copyrighted works. Miller Decl. ¶ 19. A large part of this strategy is windowing, or making the work available exclusively available through certain channels over a specific time period. *Id.* ¶ 20. Plaintiffs allege unauthorized streaming undermines their contractual commitments by weakening Plaintiffs' future negotiating position and making it more difficult for counterparties to achieve a profit. *Id.* ¶¶ 24–25.

Plaintiffs filed suit to enjoin Defendants from performing Plaintiffs' works, to enjoin Defendants from hosting the works on the PrimeWire website, for damages, and for other associated relief. Compl., ECF No. 1. The Court previously entered a preliminary injunction against Defendants. Order, ECF No. 30.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter default judgment. The Court need not make detailed findings of fact in the event of default. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). On entry of default, well-pleaded allegations in the complaint concerning liability are taken as true. Damages, however, must be proven. *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Courts consider several factors in determining whether to enter default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Local Rule 55-1 requires the party seeking default judgment to submit a declaration establishing (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice. C.D. Cal. R. 55-1.

## III. DISCUSSION

### A. Partial Default Judgment

Plaintiffs only seek default judgment as to liability and a permanent injunction. They request deferral of the issues of damages and costs until they conduct discovery. Mot. 2–3. The Ninth Circuit has implicitly endorsed the practice of entering partial default judgment. *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 785–86, 790 (9th Cir. 2011) (reviewing with approval district court's entry of default judgment as to liability before awarding damages).

### B. Jurisdiction and Service of Process

The Court must first address whether it may exercise subject-matter jurisdiction and personal jurisdiction over Defendants and whether Plaintiffs properly served Defendants. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has subject-matter jurisdiction over Plaintiffs' copyright infringement claims. 28 U.S.C. § 1338(a). Plaintiffs have properly served Defendants. ECF No. 22.

Plaintiffs assert the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) permits a court to exercise personal jurisdiction where "a claim . . . arises under federal law" if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and if "exercising jurisdiction is consistent with the United States Constitution and laws." A copyright infringement action arises under federal law. 28 U.S.C. § 1338(a). Whenever a plaintiff contends that no state court can exercise general jurisdiction over a defendant, the defendant must contest that assertion. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir. 2007). Defendants have not

appeared to argue they are subject to jurisdiction in any state court, so Plaintiffs have met this element.

Finally, exercising personal jurisdiction comports with United States law and due process if a defendant purposefully directs its activities toward the forum, if the claim arises out of or relates to the defendant's forum-related activities, and if the exercise of jurisdiction is reasonable. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). A defendant purposefully aims an act at a forum if it commits an intentional act expressly aimed at a forum that causes a harm the defendant knows is likely to be suffered in the forum. *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). Here, Defendants committed an intentional act of operating a website to stream Plaintiffs' copyrightable works. Compl. ¶¶ 2, 36–44; *see Wanat*, 970 F.3d at 1209. Defendants also expressly aimed their acts at the United States. Over half of PrimeWire traffic comes from the United States. *Id.* ¶ 4. Defendants also claim they are beneficiaries of the protections in the Digital Millennium Copyright Act. *Id.* ¶ 29. They have instructed website visitors how to use virtual private networks ("VPNs") to avoid United States law enforcement and the National Security Agency, *id.* ¶¶ 2, 29, and they have a contract with Cloudflare to ensure that PrimeWire has reliable services in the United States, *id.* ¶ 28. While the Ninth Circuit has held that a court does not have personal jurisdiction over a website operator whose United States users upload infringing content and over a website operator who uses geolocated advertisements to attract new users, *Wanat*, 970 F.3d at 1210–11, here, Defendants have targeted the United States specifically rather than global internet users generally. The references to United States laws, the large portion of United States–based website traffic, and the contract with Cloudflare demonstrate Defendants' intent to have PrimeWire target the United States specifically with their activities. Thus, Defendants have purposefully directed their activities at the United States.

The claims arise out of or relate to Defendants' contacts with the United States because the claims arise out of the operation of a website intentionally targeted at the United States. Lastly, "where a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Because Defendants have not appeared to contest the exercise of jurisdiction, Defendants have not shown the exercise of jurisdiction is unreasonable.

The Court thus concludes that it can properly consider the entry of default judgment against Defendants.

### C.  Procedural Requirements

The motion meets the procedural requirements of Local Rule 55-1. The Clerk entered default against Defendants on February 1, 2022. ECF No. 34. Defendants are not infants or incompetent, and the Servicemembers Civil Relief Act does not apply. Defendants have been served with notice. Klaus Decl. ¶¶ 3–7, ECF No. 36-16.

### D.  *Eitel* Factors

#### 1.  Prejudice to Plaintiffs

The first *Eitel* factor examines whether the plaintiff will be prejudiced if default judgment is not granted. *Eitel*, 782 F.2d at 1471. A plaintiff suffers prejudice if there is no recourse for recovery absent default judgment. *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Plaintiffs allege they have suffered significant harm to their businesses due to infringement. Defendants also remain unidentified, Van Voorn Decl. ¶¶ 37–47, so it will be difficult for Plaintiffs to get recovery without default judgment. This supports entering default judgment. *Panda Rest. Grp., Inc. v. Enymedia, Inc.*, No. 2:21-cv-3560-AB-AS, 2021 WL 4927416, at *4 (C.D. Cal. Aug. 12, 2021) (finding prejudice where a defendant does not appear in a copyright infringement case).

#### 2.  Merits of Plaintiffs' Claims and Sufficiency of Complaint

The second and third *Eitel* factors require that the plaintiff "state a claim on which the [plaintiff] may recover." *Castworld*, 219 F.R.D. at 499 (alteration in original) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002)). Plaintiffs seek default judgment on its copyright claims for induced and contributory infringement.

To state a claim for induced copyright infringement, a plaintiff must demonstrate four elements: "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir.

2013). Plaintiffs properly allege each element. First, Defendants operated the PrimeWire website and made it available to others. Compl. ¶¶ 37–41.

Second, Plaintiffs allege two acts of direct infringement by third parties. "To prove [direct] copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). The Complaint alleges Plaintiffs are the true and rightful owners of the copyrightable works in this case and have certificates of copyright registration. Compl. ¶ 21; Compl. Ex. A, ECF No. 1-1. Copyright registrations are prima facie evidence of the validity and ownership of copyrights. 17 U.S.C. § 410(c). The first alleged act of copying protected elements is third parties making unauthorized videos in violation of the reproduction right protected in 17 U.S.C. § 106(1). Compl. ¶¶ 38–40; *see A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."). The second is third parties streaming works over the internet in violation of the public performance right protected by 17 U.S.C. § 106(4). Compl. ¶¶ 38–40; *see Columbia Pictures Indus., Inc. v. Galindo*, No. 2:20-cv-03129-SVW-GJS, 2020 WL 3124347, at *2 (C.D. Cal. May 11, 2020) ("The internet streaming of full copyrighted works without authorization constitutes a violation of this exclusive right.").

Third, Defendants promoted infringement by featuring Plaintiffs' works on the website, by curating third-party streaming links, and by providing detailed instructions for rating and streaming these works. Compl. ¶¶ 41–57. Fourth, Defendants cause and encourage infringing third parties to provide streaming links to PrimeWire. *Id.* ¶¶ 41–51. Thus, Plaintiffs have properly alleged induced infringement.

To state a claim for contributory copyright infringement, a plaintiff must show: (1) the defendant knows of a third party's direct infringement; and (2) that the defendant materially contributed to or induced the infringement. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017). Defendants moderate the third-party links to confirm these links meet PrimeWire requirements, Compl. ¶ 46, use a rating system to encourage third parties to post links, *id.* ¶ 42, conceal their own identities, *id.* ¶¶ 58–62, advise users to use VPNs to conceal their identity, *id.* ¶ 2, and provide a service that connects the streaming performances and internet users, *id.* ¶¶ 1, 3. These allegations establish knowledge because they demonstrate

awareness of mass copyright infringement and infringement of Plaintiffs' works. *See Napster*, 239 F.3d at 1021 ("[I]f a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement."). These allegations establish the material contribution element because Defendants substantially assist with direct infringement by allowing infringing third parties to display their works to more users. *Cf. Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) (holding operating servers on which infringing material resides constitutes material contribution).

The second and third factors support entering default judgment.

### 3. Sum of Money at Stake

In the fourth *Eitel* factor, the Court balances "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. On this motion, Plaintiffs do not seek monetary damages, but only an injunction preventing Defendants from displaying and reproducing Plaintiffs' works. This factor therefore weighs in favor of default judgment. *See id.* at 1176–77 (finding amount at stake favored default judgment where plaintiff sought injunctive relief, not monetary damages, for trademark infringement).

### 4. Possibility of Dispute

The fifth *Eitel* factor examines whether there is likelihood of a dispute of material facts. *Eitel*, 782 F.2d at 1471–72. Upon entry of default, the court accepts all well-pleaded facts as true. *Garamendi*, 683 F.3d at 1080. As such, when a plaintiff pleads the facts necessary to prevail, there is little possibility of dispute over material facts. *Castworld*, 219 F.R.D. at 500. Plaintiffs' Complaint adequately alleges copyright infringement, so the possibility of dispute is remote.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether the defendant's actions may be due to excusable neglect. *Eitel*, 782 F.2d at 1472. There is little possibility of excusable neglect when the defendant is properly served or is aware of the litigation. *Wecosign, Inc., v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Plaintiffs properly served Defendants, and Defendants have made changes to the PrimeWire website in response to this litigation. *See* Reply, ECF No. 37; Notice of Changes,

ECF No. 39; Notice of Defaulting Defs.' Resp., ECF No. 42. The possibility of excusable neglect is minimal.

      6.      Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted). Defendants failed to respond to Plaintiffs' Complaint or offer any defense in this matter, precluding a decision on the merits. This factor does not preclude entry of default judgment. *See id.*

Weighing the *Eitel* factors, the Court finds that default judgment is appropriate.

### E.    Remedy

Through this motion, Plaintiffs seek an injunction. Am. Proposed Order, ECF No. 39-1. Courts may grant injunctive relief for copyright infringement "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a permanent injunction, "a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court incorporates the analysis of the irreparable injury, balance of hardships, and public interest factors from its order granting the motion for a preliminary injunction. Order 4–6. Plaintiffs have no adequate remedy at law for unauthorized streaming where they are unlikely to collect any damages. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219–20 (C.D. Cal. 2007); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting permanent injunction as part of default judgment in copyright infringement action in part because "defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease").

A permanent injunction is thus appropriate under the *eBay* factors. Plaintiffs bring to the attention of the Court that Defendants have allegedly changed their websites to comply with the preliminary injunction and the relief Plaintiffs requested in the permanent injunction. Reply; Notice of Changes; Notice of Defaulting Defs.' Resp. A federal court does not have jurisdiction to grant injunctive relief if the party against whom the injunction would be enforced voluntarily ceases that activity and it is "absolutely clear that the allegedly wrongfully behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted). It is the burden of the party voluntarily ceasing its conduct to appear and make the strong showing it cannot reasonably be expected to restart its behavior. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013). Defendants have not defended this lawsuit despite receiving notice and despite changing the PrimeWire website in response to the Court's orders. Should Defendants wish to make this showing, Defendants are free to enter an appearance and move to set aside the default judgment. Fed. Rs. Civ. P. 55(c), 60(b).

Plaintiffs request a new form of injunctive relief beyond the scope of the preliminary injunction: that Defendants transfer the operation of the PrimeWire websites to Plaintiffs. Am. Proposed Order ¶ 3. Other courts have approved this form of relief in copyright infringement cases. *E.g.*, *Warner Bros. Ent., Inc. v. Vega*, No. CV 11-05985 SJO (SPx), 2012 WL 13008442, at *5 (C.D. Cal. Mar. 29, 2012); *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 500–01 (S.D.N.Y. 2018) (collecting cases). The Court concludes this is appropriate and authorizes this requested relief.

### F.   Leave to Conduct Discovery

Federal Rule of Civil Procedure 26 governs the scope and timing of discovery. Pursuant to Rule 26(d)(1), a party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . [unless] authorized by these rules, by stipulation, or by court order." Federal Rule of Civil Procedure 55(b)(2) also provides that "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: . . . (B) determine the amount of damages; . . . or (D) investigate any other matter." Courts often allow discovery on the issue of damages after the entry of default. *See, e.g.*, *Oakley, Inc. v. Moda Collection, LLC*, No. SACV 16-160-JLS (JCGx), 2016 U.S. Dist. LEXIS 191048, at *19–20 (C.D. Cal. June 9, 2016) (collecting cases). The Court grants Plaintiffs leave to conduct discovery to ascertain the existence and amount of damages.

## IV. CONCLUSION

The Court grants the motion as to liability against Defendants for Plaintiffs' claims of copyright infringement. The Court also grants Plaintiffs' requested permanent injunction. The Court orders the following:

1. Defendants, and all individuals who serve as Defendants' officers, agents, servants, employees and attorneys, and other persons who have notice of this injunction and are in privity with Defendants and/or acting in active concert or participation with Defendants, their officers, agents, servants employees or attorneys, ARE HEREBY RESTRAINED AND ENJOINED from:
    a. linking to, distributing, reproducing, copying, hosting, uploading, making available for download, indexing, displaying, exhibiting, publicly performing (including without limitation streaming, transmitting, or otherwise communicating to the public), or otherwise exploiting or making any use of any rights under the Copyright Act in any motion picture or other audiovisual work (or portion(s) thereof in any form), the rights to which Plaintiffs or their affiliates own or control ("Copyrighted Works");
    b. taking any action that directly or indirectly enables, facilitates, permits, assists, solicits, encourages or induces any user or other third party (i) to link to, distribute, reproduce, copy, host, upload, download, index, display, exhibit, publicly perform (including without limitation streaming, transmitting, or otherwise communicating to the public), or otherwise use or exploit in any manner any of Plaintiffs' Copyrighted Works or portion(s) thereof; or (ii) to make available any of Plaintiffs' Copyrighted Works or portion(s) thereof for linking to, distributing, reproducing, copying, hosting, uploading, downloading, indexing, displaying, exhibiting, publicly performing (including without limitation streaming, transmitting, or otherwise communicating to the public), or for any other use or means of exploitation;
    c. transferring or performing any function that results in the transfer of the registration of the domain name of www.primewire.li, www.primewire.ag, www.primewire.vc, or

    www.primewire.tf ("PrimeWire Websites") to any other registrant or registrar other than as identified by Plaintiffs; and

  d. assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a)–(c); and

2. In order to give practical effect to the Permanent Injunction, the PrimeWire Websites are hereby ordered to be immediately transferred by the Defendants, their assignees and/or successors-in-interest or title, and/or the domain name registrars (currently Sarek Oy and Gandi SAS, collectively "Registrars") to Plaintiffs' control. To the extent the current Registrars do not facilitate the transfer of the PrimeWire Websites to Plaintiffs' control within five (5) days of receipt of this Judgment, upon Plaintiffs' request, Defendants and the top level domain (TLD) registry for each of the PrimeWire Websites (Nic AG, SWITCH, Afilias, Inc., and Association Française pour le Nommage Internet en Coopération (A.F.N.I.C.), collectively "Registries"), or their administrators, including backend registry operators or administrators, shall, within thirty (30) days, (i) change the registrar of record for the PrimeWire Websites to a registrar of Plaintiffs' choosing, and that registrar shall transfer the subject domain names to Plaintiffs, or (ii) place the PrimeWire Websites on registry hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the registries which link the PrimeWire Websites to the IP addresses where the associated websites are hosted.

3. The Court will retain jurisdiction to enforce the Permanent Injunction. Plaintiffs may request that the Permanent Injunction apply to additional domains if the Court determines that the evidence sufficiently establishes such domains are being operated by Defendants and infringe Plaintiffs' Copyrighted Works.

  IT IS FURTHER ORDERED that Plaintiffs may service this order on Defendants by email;

  IT IS FURTHER ORDERED that Plaintiffs are granted leave to seek third-party discovery on damages for their copyright infringement claims; and

  IT IS FURTHER ORDERED that Plaintiffs' requirement to post a bond shall be dissolved and that bond relinquished.

      The Court gives Plaintiffs leave to conduct discovery as to damages and defers the entry of final judgment until further motion by Plaintiffs. Plaintiffs shall file either a further motion for default judgment or an explanation for why they need more time to conduct damages discovery within 90 days of this order. The Court will deem failure to timely file a further motion as abandonment of the unresolved claims for damages and costs.

**IT IS SO ORDERED.**